No. 82,996

KANSAS CITY RENAISSANCE FESTIVAL CORP., a Kansas Corporation, *Appellee*, v. CITY OF BONNER SPRINGS, KANSAS, *Appellant*, and CONTEMPORARY GROUP, INC., and WILLIE L. CUNNINGHAM, *Appellees*, v. CITY OF BONNER SPRINGS, KANSAS, *Appellant*.

(8 P.3d 701)

Opinion filed July 14, 2000.

*Neil R. Shortlidge*, of Stinson, Mag & Fizzell, P.C., of Leawood, argued the cause, and *Joseph P. Perry*, of Perry and Trent, L.L.C., of Bonner Springs, was with him on the briefs for appellant.

*Cynthia L. Reams-Martin*, of Weisenfels & Vaughan, P.C., of Kansas City, Missouri, argued the cause, and *John R. Weisenfels*, of the same firm, and *Reid F. Holbrook*, of Holbrook, Heaven & Osborn, of Kansas City, were with her on the briefs for appellee Kansas City Renaissance Festival Corp.

*Thomas W. Rynard*, of Jefferson City, Missouri, argued the cause, and *Kenton E. Snow* and *John C. Craft*, of Craft Fridkin & Rhyne, L.L.C., of Kansas City, Missouri, were with him on the briefs for appellees Contemporary Group, Inc., and Willie L. Cunningham.

*Donald L. Moler, Jr.*, executive director, and *Kimberly A. Gulley*, and *Larry A. Kleeman*, of Topeka, were on the brief of *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Kansas City Renaissance Festival Corp. (Renaissance Festival) and Contemporary Group, Inc., and Willie L. Cunningham (collectively Contemporary) challenged the validity of a Bonner Springs ordinance imposing a tax on the admission of persons entering the premises of a place of amusement. Their de-

claratory judgment actions were consolidated in the district court. On cross-motions for summary judgment, the district court held that the ordinary ordinance was not valid. Bonner Springs appealed. The case was transferred from the Court of Appeals to this court pursuant to K.S.A. 20-3018(c).

A brief was filed by the League of Kansas Municipalities (League) as *amicus curiae.*

The material facts are not disputed and can be summarized as follows: Renaissance Festival is a corporation which operates an annual 7-weekend festival in Bonner Springs. Contemporary leases and operates Sandstone Amphitheater (Sandstone), an outdoor entertainment facility, in Bonner Springs. On August 18, 1997, Bonner Springs adopted Ordinance No. 1791, which levies a tax on amusements within the city. Based on the definition of "amusement" in the ordinance, only the Renaissance Festival and Sandstone currently are obligated to collect the amusement tax.

The tax imposed by Ordinance No. 1791 is "upon all amusements within the city at the rate of $.50 per ticket for admission of each person entering the premises of a place of amusement for the purpose of witnessing, viewing or participating in the amusement. The tax herein levied shall be in addition to any other taxes."

Ordinance No. 1791 is not a charter ordinance.

On February 17, 1998, Bonner Springs passed Charter Ordinance No. 16 for the purpose of exempting the City from the provisions of K.S.A. 12-194 that pertain to the imposition of excise taxes. Section 1 of the charter ordinance provides:

"The City of Bonner Springs, Kansas, by virtue of the power vested in it by Article 12, Section 5 of the Constitution of the State of Kansas, hereby elects to exempt itself from and make inapplicable to it the provisions of K.S.A. 12-194, insofar as that statute prohibits the City of Bonner Springs, Kansas, from imposing any excise tax, or tax in the nature of an excise."

The charter ordinance became effective in April 1998.

Where only questions of law are presented, this court's review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.,* 263 Kan. 875, 879, 953 P.2d 1027 (1998).

In its petition in the district court, Renaissance Festival prayed for a declaratory judgment that Ordinance No. 1791 was invalid.

Contemporary's petition was more far-ranging. In addition to praying for a declaration that Ordinance No. 1791 was invalid, Contemporary sought a ruling that Charter Ordinance No. 16 is invalid and has no curative effect on Ordinance No. 1791, and that "adoption of H.B. No. 2584 restores the uniform status of the local retailers' sales tax and voids any effort of the City to adopt regulations that contradict the terms of that legislation." Bonner Springs counterclaimed against Contemporary, seeking validation of Ordinance No. 1791 and an order requiring payment of amusement taxes due under the ordinance.

In its motion for summary judgment, Renaissance Festival prayed for the entry of summary judgment on its "claim for declaratory judgment." In its motion for summary judgment, Contemporary sought an order declaring that Ordinance No. 1791 was invalid and Charter Ordinance No. 16 was without effect. Bonner Springs, in its motion for summary judgment, sought validation of Ordinance No. 1791.

The district judge announced his ruling on the parties' cross-motions for summary judgment from the bench:

"[I]t appears to me that as a matter of law, in order for the city of Bonner Springs to pass any kind of an ordinance that is in conflict with K.S.A. 12-194, it had to do so by charter ordinance. *Now, I'm not going to answer the question of whether or not even with the Charter Ordinance it had the authority to impose this tax, because I don't think that is a question before me. In light of my ruling that a charter ordinance is required, I think that is as far as the inquiry needs to go. And if I went ahead and issued a ruling . . . as to whether or not K.S.A. 12-194 applied uniformly, I would simply be giving you an advisory opinion and I don't think I should do that.*" (Emphasis added.)

Following his ruling, the trial judge asked, "Does either side wish me to make more specific findings or rulings?" Counsel for Contemporary, the only party that had sought a further-reaching ruling, did not ask the district court to address the additional issues. Instead, he agreed with Renaissance Festival's counsel's suggestion "that we have a simple journal entry that recites just what the court said." The journal entry of judgment simply states that declaratory judgment is entered in favor of Renaissance Festival and Contemporary and against Bonner Springs declaring Ordinance No. 1791

invalid. On the City's counterclaim, the journal entry states that judgment is entered in favor of Contemporary.

The trial court's ruling is extremely narrow. It is contended by Bonner Springs that the trial court's conclusion is incorrect for reasons centering on the statute's nonuniform applicability, which, of course, the trial court refused to consider. The only ordinance considered by the district court was ordinary Ordinance No. 1791; therefore, it is the only ordinance to be considered by this court on appeal. As will be discussed below, this court's analysis may of necessity touch on the effectiveness of the charter ordinance as well as that of the ordinary ordinance. H.B. 2584, however, which was not considered by the district court, is not an integral part of the analysis and will not be considered by this court. Thus, there may be some question of whether the district court's decision was a final decision as to Contemporary. See K.S.A. 60-2102. However, no claim or argument to that effect is made, and Contemporary and Renaissance Festival both limit their arguments to the validity of Ordinance No. 1791. Thus, our consideration will be limited to the validity of that ordinance.

In 1961, the home rule amendment to the Kansas Constitution took effect and empowered cities to determine their local affairs. Kan. Const. art. 12, § 5(b). The legislature retains power over statewide matters. Hence, home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment. Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Kan. Const. art. 12, § 5(c). Where there is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice.

At the heart of the present appeal is Bonner Springs' advocating a departure from this general scheme for tax matters. The City believes that a nonuniform legislative tax enactment is ineffective. Hence, if the City wants to take an action that conflicts with a

nonuniformly applicable statute, it may do so by ordinary ordinance. There is no need, according to the City's theory, for the City to exempt itself from ineffective legislation by passing a charter ordinance. In this hypothesized scheme for tax matters, charter ordinances have no role—conflict between the local action and a nonuniform state statute will never arise because a nonuniformly applicable statute will never be effective.

According to the trial judge, in the present case the parties agreed that the amusement tax established by Bonner Springs ordinary Ordinance No. 1791 conflicts with K.S.A. 12-194. The statute provides in part: "No city or county shall levy or impose an excise tax or a tax in the nature of an excise, other than a retailers' sales tax and a compensating use tax, upon the sale or transfer of personal or real property, or the use thereof, or the rendering of a service . . . ." According to the district judge, the parties' agreeing that there is conflict between the statute and the ordinance supplies the answer to the question of whether the ordinary ordinance was effective, and the answer is negative. The trial judge so held.

Bonner Springs directs the court's attention to subsections (b) and (c) of the home rule amendment:

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided*, That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, *to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction* and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (c).

"(c)(1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying

to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

(2) A charter ordinance is an ordinance which exempts a city from the whole or any part of any enactment of the legislature as referred to in this section and which may provide substitute and additional provisions on the same subject." (Emphasis added.) Kan. Const. art. 12, § 5(b) and (c).

Four specific areas in which there are limitations on home rule authority are stated in subsection (b): (1) enactments of statewide concern uniformly applicable to all cities, (2) enactments uniformly applicable to all cities, (3) tax limiting or prohibiting enactments uniformly applicable to all cities, and (4) enactments limiting indebtedness. In this scheme, enactments limiting indebtedness need not be uniformly applicable to effectively block local action, and revenue measures are distinguished by requiring uniform applicability not to all cities but rather to all cities of the same class. The subsection (b) proviso authorizes the legislature's creating four classes of cities for the purpose of imposing taxing limitations or prohibitions. These classes of cities "are not classes for general government purposes but are classes for the purpose of imposing the revenue limitations or prohibitions." Martin, *Home Rule for Kansas Cities*, 10 U. Kan. L. Rev. 501, 505 (1962).

Since shortly after the home rule amendment became effective in 1961, there has been speculation as to why the italicized portion of subsection (b) was not repeated in subsection (c). 10 U. Kan. L. Rev. at 512. Weighing in on the side of Bonner Springs, the League argues that the subsection (b) phrase "enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax" is not repeated in the charter ordinance subsection, subsection (c), because a charter ordinance would never be needed for that purpose. The League argues that the legislature's retained power to limit or prohibit the taxing power of cities is restricted, by the terms of the proviso, to enacting tax limitations applicable uniformly to all cities of the same class. For this reason, the League contends, any tax limiting legislation that is not uniformly applicable to all cities of the same class is ineffective. Hence, there would never be occasion for a city to use

a charter ordinance to exempt itself from nonuniform tax limiting legislation. This, according to the League, would explain the absence of the subsection (b) category of tax limiting or prohibiting statutes from subsection (c), which authorizes cities' exempting themselves from state legislation by passing charter ordinances.

The League's theory is not persuasive. The legislature's retained power in nonrevenue (and nonindebtedness) matters is restricted to enactments applicable uniformly to all cities. The League's explanation for why nonuniform revenue enactments are ineffective but nonuniform nonrevenue enactments are effective is that the latter are specified in subsection (c) for exemption by charter ordinance. But this "explanation" simply substitutes the question for an answer. It offers no insight into the drafters' intent. An early commentator conjectured that the intent may have been "not to permit cities to change by charter ordinance or exempt themselves from tax limit statutes applying to one class of cities established for tax purposes." 10 U. Kan. L. Rev. at 512. It even might be argued that the absence from subsection (c) of the phrase "enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax" was intended to permit cities to exempt themselves by charter ordinances from revenue enactments even where they are uniformly applicable to all cities of the same class. This construction may be seen more readily when the exceptions for uniformly applicable and indebtedness enactments are deleted from the general rule of subsection (c)(1): "Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature *applying to such city* . . . shall not apply to such city." (Emphasis added.)

The alternative arguments are offered simply to show that the arguments of the City and the League are not comprehensive. Their greatest obstacle, though, is that the home rule amendment has been in effect for nearly 40 years, but the advocates are unable to cite any cases in which the scheme it envisions has been applied.

The League and Bonner Springs place great reliance on *Clark v. City of Overland Park*, 226 Kan. 609, 602 P.2d 1292 (1979). The League characterizes *Clark* as involving questions nearly identical

to those in the present case. However, the *Clark* question is quite different from the present one.

In *Clark* resident taxpayers challenged an Overland Park ordinance imposing a city sales tax. They contended that the city was required to conduct a referendum. When the ordinance was enacted, there were two statutes bearing on the procedure to be used by the city in levying a retail sales tax. The first was K.S.A. 1977 Supp. 12-137, which Overland Park relied on and which provided "for the enactment of municipal sales tax ordinances by a two-thirds vote of the members-elect of the governing body, and requiring a referendum only in the event that a proper petition for a referendum was filed." 226 Kan. at 613. Overland Park's governing body passed the sales tax ordinance by more than a two-thirds majority, and a proper petition for referendum was not filed. Thus, its sales tax ordinance was enacted in accordance with K.S.A. 1977 Supp. 12-137. The second statute was K.S.A. 1977 Supp. 12-172, which made a referendum mandatory for enactment of a local sales tax. According to this court, the controlling issue on appeal was whether K.S.A. 1977 Supp. 12-172 was an enactment " 'applicable uniformly to all cities of the same class,'" as the challenging taxpayers contended. 226 Kan. at 614. The court concluded that 12-172 was not applicable uniformly to all cities of the same class:

"A plain reading of K.S.A. 1977 Supp. 12-172(*a*) indicates that only a city having a specific relationship to its county may enact a sales tax. . . . Clearly, K.S.A. 1977 Supp. 12-172 brings all cities within its scope, since all cities must examine their relationship with their county to determine their ability under the statute to impose a sales tax, but cities are not uniformly subject to the legislative restrictions." 226 Kan. at 616.

The court held that 12-172 was not uniformly applicable, and, for that reason, 12-172 was constitutionally insufficient to limit Overland Park's power to impose a sales tax. 226 Kan. at 616.

The court also rejected the taxpayers' alternative argument, which was that, irrespective of uniform applicability, 12-172 was partially applicable to Overland Park so that the city was required to exempt itself by enacting a charter ordinance. The court stated:

"The charter ordinance procedure is required where the state and local enactments address the same subject, and there is a substantive conflict between

them. . . . In the case at hand, there was no substantive conflict between K.S.A. 1977 Supp. 12-172 and the city's ordinance. The power to tax is granted to the cities by the Constitution. 12-137 and 12-172 both provided a method by which cities could enact sales taxes. Overland Park chose to follow the alternative procedure provided by K.S.A. 1977 Supp. 12-137." 226 Kan. at 617.

The principal question in *Clark* was which of two statutes governed. The court's rationale included home rule concepts. Only with regard to the alternative argument, however, did the court briefly consider the typical home rule question of whether a charter ordinance was needed due to conflict between the local and state enactments to accomplish the city's desired action.

Bonner Springs contends that the *Clark* analysis should have been used by the district court in the present case. That is, the trial judge first should have determined whether K.S.A. 12-194 applies uniformly to all cities of the same class. If not, as Bonner Springs contends, 12-194 was ineffective and the City was free to enact the amusement tax in the way it did by following the alternative procedures of K.S.A. 12-137. There is a great difference, however, between the *Clark* controversy over which of two state-prescribed procedures applied and the present case in which the state statute (12-194) prohibits the substantive action taken by the Bonner Springs governing body.

In the present case, the district judge rejected the claim that *Clark* controlled. The district judge distinguished the present case from *Clark* on the facts:

"[*Clark*] seems to be the only authority as far as case law is concerned, that would support even remotely their position. . . . There, the city of Overland Park passed a retail sales act which was not in conflict with any state statute. The court specifically held that there was not substantive conflict between that tax and the taxing statutes of the state. . . . [T]hat case did not involve a situation where the city was trying to do something that directly and substantially and substantively conflicted with State law, which is what I believe this case presents. Bonner Springs— the city of Bonner Springs passed an excise tax which the state law said they couldn't do, and that required under the Constitution that any such action be done by Charter Ordinance. And even if Charter Ordinance is passed, they still can't do it unless the State Statute in effect applies in a non-uniform manner."

Bonner Springs would have the court in the present case first examine 12-194 to determine whether it is uniformly applicable to

all cities in a class. Contemporary contends that the City's seeking this court's invalidation of the applicability of 12-194 is improper because it is raised for the first time on appeal. Contrary to Contemporary's contention, the applicability of the statute was at the heart of the City's argument to the district court that an ordinary ordinance sufficed.

Bonner Springs directs the court's attention to *Home Builders Ass'n v. City of Overland Park*, 22 Kan. App. 2d 649, 921 P.2d 234, *rev. denied* 260 Kan. 993 (1996), in which the Court of Appeals considered the uniform application of 12-194. The Court of Appeals considered city ordinances that imposed an excise tax on plat approval and recordation. The district court invalidated the ordinances as being beyond the scope of the city's home rule authority on the ground that the ordinances tried to do what the legislature prohibited in 12-194. The Court of Appeals took quite a different approach and reversed the district court's ruling. The Court of Appeals reasoned that even though 12-194 on its face appears to apply uniformly to all cities of the same class, the inquiry did not stop there. Citing *City of Junction City v. Griffin*, 227 Kan. 332, 335-37, 607 P.2d 459 (1980), and *Claflin v. Walsh*, 212 Kan. 1, 8, 509 P.2d 1130 (1973), the Court of Appeals expressed the view that determining whether one statute was applicable uniformly to all cities of the same class required examination of the entire legislative package. In the case of K.S.A. 12-194, which had a "long and confusing legislative history," the Court of Appeals first had to determine whether in its current manifestation it was part of a legislative package. 22 Kan. App. 2d at 665. For that purpose, the essential question was whether that statute "concerns the same subject matter as the rest of the local retailers' sales tax enactment." 22 Kan. App. 2d at 665.

The Court of Appeals determined:

"The local retailers' sales tax enactment, K.S.A. 12-187 *et seq.*, is construed, and it is held that K.S.A. 12-194 is part of the enactment for purposes of home rule analysis."

"The local retailers' sales tax enactment, K.S.A. 12-187 *et seq.*, is held to be a nonuniform enactment for purposes of home rule analysis." 22 Kan. App. 2d 649, Syl. ¶¶ 5 and 6.

The Court of Appeals therefore concluded: "By treating cities within the same class nonuniformly, the legislature has opened up the local retailers' sales tax enactment to home rule authority." 22 Kan. App. 2d at 668.

Since the Court of Appeals' decision in *Home Builders*, the legislature has amended the local retailers' sales tax act. Bonner Springs and the League contend that the amendments should not affect the Court of Appeals' analysis. Renaissance Festival and Contemporary disagree. Contemporary included a copy of the bill, H.B. 2584, as an appendix to its brief. This issue has not been considered by the district court and will not be considered in this appeal.

For the purpose of this court's review, perhaps the most significant thing about Bonner Springs' reliance on *Home Builders* is that the Court of Appeals considered whether K.S.A. 12-194 was uniformly applicable in order to determine whether the City's *charter* ordinance was valid. 22 Kan. App. 2d at 663. As previously noted, whether the City can do so by charter ordinance is not before us in this appeal.

We reject the City's and the League's arguments. The failure to repeat the italicized language of subsection (b) in subsection (c) of article 12, § 5 of the Kansas Constitution does not limit the legislature's taxing authority to legislation uniformly applicable to all cities of the same class. Under subsection (b), the italicized language is an additional means for the legislature to preempt the field of taxation. The City can be precluded from enacting a tax by legislation applicable uniformly either to all cities or to all cities of the same class. The absence of the italicized language of subsection (b) in subsection (c) does not alter this fact. As to K.S.A. 12-194, the failure to repeat the italicized language in subsection (c) raises the question of whether the City can charter out from K.S.A. 12-194 but not its applicability to the City.

K.S.A. 12-194 is applicable to the City, and the district court correctly determined that the City could not enact the admission tax by ordinary ordinance.

The judgment of the district court is affirmed.